

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN RE: THE MATTER OF J.R.K., | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **WD85143** |
| | ) | |
| JUVENILE OFFICER, | ) | **Filed: March 28 2023** |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BUCHANNAN COUNTY**
The Honorable Patrick K. Robb, Judge

**Before Division Two: Edward R. Ardini, Jr., Presiding Judge,
Lisa White Hardwick, Judge, and Karen King Mitchell, Judge**

J.R.K. appeals the juvenile court's judgment finding that he violated a condition of his probation by failing to pay restitution. He contends this finding was erroneous because the court never entered an authorized probation order. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

J.R.K. was born on December 1, 2005. In April 2020, the Juvenile Officer of Buchanan County ("Juvenile Officer") filed a petition alleging J.R.K. committed the class A misdemeanors of second-degree tampering and leaving the scene of an accident, if committed by an adult. The juvenile court found the allegations true beyond a reasonable

doubt and took jurisdiction over him. The court placed J.R.K. in the legal and physical custody of his mother and father and placed him on probation with conditions, to be supervised by the Juvenile Office. In May 2020, the court held a restitution hearing and ordered J.R.K. to pay restitution in the amount of $4,491.12, jointly and severally with another juvenile, C.G.[1]

In July 2020, the Juvenile Officer filed a motion to modify the previous order of disposition alleging J.R.K. committed the class A misdemeanor of fourth-degree assault, if committed by an adult, and violated the conditions of his probation by having contact with C.G. In September 2020, the court held a hearing on the motion to modify and found the allegations to be true. The court ordered J.R.K. to continue on probation with conditions.

In March 2021, the Juvenile Officer filed another motion to modify the previous order of disposition alleging in Count I that J.R.K. was repeatedly and without justification absent from school; in Count II that he engaged in behavior injurious to his welfare by testing positive for marijuana; in Count III that J.R.K. violated the conditions of his probation by failing to appear for a substance abuse assessment as directed by his probation officer; in Count IV that he committed the class A misdemeanor offense of failure to appear under Section 544.665,[2] if committed by an adult, when he failed to

---

[1] The court stated that J.R.K. was not required to pay more than $4,000.00 of the total amount of restitution ordered.

[2] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2021 Cumulative Supplement.

appear for a hearing; and in Count V that he engaged in behavior injurious to his welfare when he tested positive for marijuana a second time. The juvenile court held a hearing on this motion to modify in April 2021. During the hearing, J.R.K. admitted the allegations in Counts I, II, and V were true, and the Juvenile Officer dismissed Count III. After hearing evidence on Count IV, the juvenile court found the failure to appear allegation to be true and ordered J.R.K. to be placed in the Buchanan County Academy.[3]

In June 2021, the Juvenile Officer filed a motion to modify the previous order of disposition, informing the court that J.R.K. completed the program at the Buchanan County Academy. On June 28, 2021, the court granted the motion and ordered J.R.K. released from the academy and placed on probation, to be supervised by the Juvenile Office.

In November 2021, the Juvenile Officer filed a motion to modify the previous order of disposition alleging in Count I that J.R.K. committed the municipal offense of disorderly conduct, if committed by an adult, on October 1, 2021; in Count II that he committed the municipal offense of disorderly conduct, if committed by an adult, on September 16, 2021; in Count III that J.R.K. was repeatedly and without justification absent from school; in Count IV that he violated a condition of his probation by failing to pay restitution as ordered by the court in May 2020; and in Count V that J.R.K. violated a

---

[3] J.R.K. appealed this adjudication, arguing Section 544.665 does not apply to the failure to appear for juvenile proceedings. We agreed and reversed the juvenile court's determination that J.R.K. violated Section 544.665. *Interest of J.R.K.*, 643 S.W.3d 141, 146 (Mo. App. 2022).

condition of his probation by failing to attend treatment as directed by his probation officer.

J.R.K. filed a motion to dismiss Counts IV and V for failing to state a claim upon which relief could be granted. He argued, *inter alia*, that he could not be found to have violated the conditions of his probation in Counts IV and V because the juvenile court had never properly placed him on probation. Specifically, he asserted that, to place him on probation, the juvenile court needed to have suspended the execution of a commitment order. Because the court had placed him on probation without suspending the execution of a commitment order, J.R.K. argued that his mere failure to comply with the Juvenile Office's directives, as alleged in Counts IV and V, was insufficient to deprive him of his fundamental right to liberty.

At the beginning of the adjudication hearing, J.R.K. renewed his motion to dismiss Counts IV and V. The juvenile court again denied the motion. The Juvenile Officer then dismissed Count V. After hearing all of the evidence on the remaining counts, the court found the allegations of disorderly conduct in Counts I and II to be true beyond a reasonable doubt. The court did not find the allegation of truancy in Count III to be true, but it did find the allegation in Count IV that J.R.K. violated a condition of his probation by failing to pay restitution to be true.

During the dispositional hearing, the Juvenile Officer recommended J.R.K. be committed to the Buchanan County Academy. In response, J.R.K. again asserted he was not properly on probation and, therefore, his probation could not be revoked for failing to pay restitution, because the court's original disposition order and subsequent

4

modification orders did not suspend execution of a commitment order before placing him on probation. J.R.K. further argued the delinquency offenses alleged in Counts I and II were insufficient to "deprive [him] of months of his liberty."

The juvenile court found J.R.K. had not been successful in the community on probation and his commitment to the Buchanan County Academy was appropriate. The court emphasized it was not committing J.R.K. to the academy "because of the restitution issue at all," stating, "In fact, if restitution was the only issue, he would not be ordered committed to the academy." Rather, the court explained it was committing J.R.K. to the academy because of the delinquency offenses alleged in Counts I and II. The court subsequently entered its order finding the allegations in Counts I and II were true beyond a reasonable doubt; the Juvenile Officer did not prove the allegations in Count III; and the allegations in Count IV were true. The court ordered J.R.K. committed to the Buchanan County Academy. J.R.K. appeals.

## STANDARD OF REVIEW

We review juvenile cases "in the same manner as other court-tried cases." *D.C.M. v. Pemiscot Cty. Juvenile Office*, 578 S.W.3d 776, 786 (Mo. banc 2019) (citation omitted). We will affirm the juvenile court's judgment "unless it is not supported by evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Id*. We review questions of law *de novo*. *B.O. v. Juvenile Office*, 595 S.W.3d 506, 509 (Mo. App. 2020).

5

## ANALYSIS

In his sole point on appeal, J.R.K. contends the juvenile court erred in finding he violated a condition of his probation by failing to pay restitution, as alleged in Count IV of the November 2021 motion to modify, because the court never entered an authorized probation order under Section 211.181. J.R.K. argues the only provisions of Section 211.181 authorizing probation require the suspended execution of a commitment order, and no suspended execution of a commitment order was ever entered in his case.

J.R.K.'s point requires us to interpret Section 211.181. "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *In re Boland,* 155 S.W.3d 65, 67 (Mo. banc 2005). "We will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result." *Richest v. City of Kansas City*, 643 S.W.3d 610, 614 (Mo. App. 2022) (citation omitted). We are to liberally construe the juvenile code, keeping in mind that Missouri's child welfare policy is based upon "what is in the best interests of the child." *In re A.G.R.,* 359 S.W.3d 103, 110 (Mo. App. 2011) (quoting § 211.011).

When the Juvenile Officer filed the November 2021 motion to modify, the juvenile court had previously determined, over the course of orders entered between April 2020 and April 2021, that J.R.K. had committed status offenses under Section 211.031.1(2) and delinquency offenses under Section 211.031.1(3). Section 211.181.2

and .3 set out the possible disposition options for a child who has been adjudicated to have committed status and delinquency offenses.

J.R.K. argues that the only disposition option under Section 211.181.2 and .3 that allows for probation requires the court to suspend the execution of a commitment order. Subsections .2 and .3(8) of Section 211.181 state, in pertinent part, that execution of any order entered by the court, "including a commitment to any state agency, may be suspended and the child placed on probation subject to such conditions as the court deems reasonable. After a hearing, probation may be revoked and the suspended order executed." Because the court did not suspend the execution of a commitment order in any of the dispositional orders in which it placed him "on probation," J.R.K. insists those dispositional orders were not authorized probation orders,[4] and he could not be found to have violated a condition of his probation by failing to pay restitution.[5] We disagree.

One of the dispositional options authorized under both Section 211.181.2 and .3 is to place the child "under supervision in his or her own home," in the custody of a relative, "and upon such conditions as the court may require." § 211.181.2(1) and .3(1).

---

[4] There is no indication in the record that, when the court entered the dispositional orders placing or continuing him on probation without suspending the execution of a commitment order, J.R.K. challenged the court's authority to do so. J.R.K. was represented by counsel at every dispositional hearing.

[5] In the argument section of his brief, J.R.K. also asserts the court could not revoke his probation for violating a condition of probation without having first suspended the execution of a commitment order. The juvenile court did not "revoke" his probation when it committed him to the Buchanan County Academy. The court expressly stated it was committing J.R.K. to the academy for the two new delinquency offenses and not for his non-payment of restitution.

7

This is exactly the disposition the court ordered in its initial April 2020 disposition order when it placed J.R.K. in his own home, in the legal and physical custody of his parents, on probation supervised by the Juvenile Office, and upon certain conditions, including restitution. The court ordered this same disposition in its September 2020 modification order, as it continued to place him in the legal and physical custody of his parents, on probation to be supervised by the Juvenile Office, and upon certain conditions.

The only time J.R.K. was under a different disposition was between April 2021 and June 2021, when the court ordered him committed to the Buchanan County Academy, a disposition option prescribed under Section 211.181.2(2)(a) and .3(2)(a). After the court released him from the Buchanan County Academy on June 28, 2021, the court again placed him in the legal and physical custody of his parents, on probation supervised by the Juvenile Office.

That the court referred to placing J.R.K. "on probation" in each of the dispositional orders did not transform the disposition from that authorized under Section 211.181.2(1) and .3(1), to that authorized under Section 211.181.2 and .3(8). Liberally construing subsections .2(1) and .3(1) of Section 211.181, the disposition described in those subsections—placing the child in the legal and physical custody of his parents, under supervision, and upon certain conditions ordered by the court—is synonymous with placing the child on probation. "[U]nder supervision" necessarily means under the supervision of the Juvenile Office, and "upon such conditions as the court may require" necessarily means that the court can enforce those conditions through modifications of its dispositional orders. It is illogical, and contrary to the best interests of the child, to

8

interpret subsections .2(1) and .3(1) to mean that only the child's parents, and not the Juvenile Office, can supervise the child's placement, and that the juvenile court, despite having jurisdiction over the child, has no authority to enforce the conditions of the child's placement. Thus, while the court certainly could have suspended the execution of a commitment order and placed J.R.K. on probation pursuant to subsections .2 and .3(8), that was not the only disposition option allowing for probation under Section 211.181.

The juvenile court's orders placing J.R.K. in the legal and physical custody of his parents, on probation supervised by the Juvenile Office, and upon such conditions ordered by the court, including the payment of restitution, were authorized dispositional orders under Section 211.181.2(1) and .3(1). Therefore, the court's finding that J.R.K. violated a condition of his probation when he failed to pay restitution was not erroneous. Point denied.

## CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.

9